# IN THE COURT OF APPEALS OF IOWA

No. 20-1247
Filed December 16, 2020

IN THE INTEREST OF R.S.,
Minor Child,

M.S., Father,
        Appellant.
_____

Appeal from the Iowa District Court for Keokuk County, Daniel Kitchen, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED AND REMANDED.**

Peter Stiefel, Victor, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Misty White Willis of White Law Office, Sigourney, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Vaitheswaran and Greer, JJ.

**BOWER, Chief Judge.**

A father appeals the termination of his parental rights.  We find the father was not prejudiced by the disputed exhibit, clear and convincing evidence supports termination, termination is in the child's best interests, no applicable factor weighs against termination, and a guardianship is not appropriate.  We affirm and remand to the juvenile court for entry of a nunc pro tunc order.

**I. Background Facts & Proceedings**

In August 2018, following a report of methamphetamine use in the home, R.S. was adjudicated a child in need of assistance (CINA), removed from the mother's care, and placed with the father.[1]  On December 21, 2018, the child was removed from the father's custody after the father tested positive for methamphetamine and amphetamines.  The child was placed with the paternal grandparents.

The father had hair tests come back positive for methamphetamine in December 2018, February and March 2019, and February 2020.  The father had random urinalysis drug tests for work and another urine test as part of a substance-abuse evaluation, all of which were free of illegal substances.  The father had two substance-abuse evaluations where he reported no drug use and no treatment was recommended.

---

[1] An older half-sibling was also removed from the mother's care and placed with a relative.  The mother's parental rights to both children were terminated in the same order, but she did not appeal.

The father had weekly supervised visitation at his home.[2] He also had the option to visit the child with supervision by his parents but rarely did so, which he attributed to his work schedule. He did not provide his parents financial support for the child. The family support specialist who supervised the visits found the father's home to be suitable and observed the father and child "are well-bonded." A social worker observed the child had a stronger bond with the grandparents and was fully integrated into their home.

The termination hearing was held on March 5 and July 23, 2020.[3] The juvenile court concluded the child could not be returned to either parent's home and terminated each parent's rights pursuant to Iowa Code section 232.116(1)(h) (2020). The father appeals.

**II. Standard of Review**

"In termination-of-parental-rights cases, we review the proceedings de novo." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We give weight to, but are not bound by the juvenile court's findings of fact. *Id.* Facts sufficient to sustain termination must be established by clear and convincing evidence. Iowa Code § 232.117(3). "Evidence is considered clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence." *M.W.*, 876 N.W.2d at 219 (altered for readability) (citation omitted).

---

[2] Due to the COVID-19 pandemic, in April and May 2020 visits were done via video call and the father was not allowed to visit the child at the grandparents' home.

[3] The second day of the hearing was continued three times "due to the COVID-19 public health situation."

### III. Analysis

*1. Admissibility of exhibit.*[4] The father objects to the admission of the results of his February 2020 hair drug test on foundational and relevancy grounds. The State counters that because the father's counsel asked questions about the document after objecting to its admission, it "opened the door to the exhibit coming into the record." We review evidentiary rulings by the juvenile court for an abuse of discretion. *In re E.H.*, 578 N.W.2d 243, 245 (Iowa 1998). "[E]ven the erroneous admission of . . . evidence will not result in reversal unless it is prejudicial." *In re A.S.*, 743 N.W.2d 865, 868 (Iowa Ct. App. 2007).

Even without the report itself, the information of the failed drug test was still part of the juvenile court's record.[5] The family support specialist and social worker both testified the father failed the February 2020 drug test, and the information was included in their reports, which were admitted without objection.

As the report of the drug test results is cumulative of the reports admitted without objection, the father was not prejudiced by the admission of the exhibit.

*2. Grounds for termination.* The juvenile court's termination order addressed the termination of the father's rights, as well as the termination of the rights of the mother and the father of the older sibling, listing four grounds under

---

[4] We are unable to find in the record provided if or when the juvenile court admitted the disputed drug test. The father objected to the exhibit from the beginning of the hearing. On the first day of the hearing, the court expressly reserved ruling on the admissibility of the test until after the father's testimony, but it made no ruling the second day of trial after the father's testimony and did not rule on the admission in the findings of fact, conclusions of law, and order.

[5] The report itself has no indicia of unreliability and appears valid on its face. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). The father did not object to the three earlier positive hair tests and does not distinguish how the procedures for this test differed from the earlier tests.

paragraphs (a), (b), (f), and (h) of Iowa Code section 232.116(1)—. The State only included paragraph (h) in its petition to terminate the father's parental rights, and it is clear from the juvenile court's conclusions of law that the other listed grounds do not apply to this father-child relationship. On appeal, the State agrees section 232.116(1)(h) was the only ground under which the father's rights could be terminated. To the extent the termination order is unclear, the father's parental rights were not terminated under section 232.116(1)(a), (b), or (f), and the juvenile court should enter an order nunc pro tunc to clarify.

The remaining ground for termination, Iowa Code section 232.116(1)(h), requires the court find the child is three years of age or younger, has been adjudicated a CINA, has been out of the parent's custody at least six of the last twelve months, and the child cannot be returned to the parent at the present time. The father concedes the first three elements have been established by clear and convincing evidence. He claims the State has failed to show the child could not be returned to his custody.

The primary concern preventing the return of the child to the father is the father's denial of drug use and subsequent lack of treatment. The child was removed from the father's care after he tested positive for methamphetamine in December 2018. He then tested positive again in February and March 2019. He claimed to have been sober for four years and failed to disclose his positive tests during substance-abuse evaluations in January and July 2019. The father's July 2019 substance-abuse evaluation included a urinalysis test, which came back negative for all substances. Neither evaluation recommended treatment, and one evaluation specifically noted his lengthy period of abstinence. In February 2020,

he tested positive for methamphetamine again, still denying any use for the past several years. He did not seek a new substance-abuse evaluation following the 2020 positive test.

The child had been removed for more than a year without a change in the father's behavior. The father's drug use led to the child's removal from his custody, and the evidence shows he continues to use drugs despite his claims otherwise. He did not provide substance-abuse evaluators necessary information regarding recent positive tests, resulting in no treatment being recommended. Under these circumstances, the child cannot be safely returned to the father.

We find clear and convincing supports the termination of the father's rights under Iowa Code section 232.116(1)(h).

*3. Best interests of the child and exceptions to avoid termination.* The father claims termination of his parental rights is not in the child's best interests, *see* Iowa Code § 232.116(2), and the court should have declined to terminate because the child is placed with the paternal grandparents and termination would be detrimental to the child due to the close father-child relationship. *See id.* § 232.116(3)(a), (c) (providing permissive factors that may weigh against termination, including a "relative has legal custody of the child" and "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship").

When evaluating the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see A.B.,* 815 N.W.2d at 776. "It is well-settled law that we cannot deprive a child of permanency after the State has

proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent . . . ." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

Evaluating the father's connection with the child, the juvenile court concluded,

> [The father] maintained consistent employment and housing. However, he participated in only minimal parenting time with [the child], citing long work hours and the requirement to travel for work. . . . [The father] has maintained his own home, which has adequate space for [R.S.], but has not engaged with [the child] more than a couple of hours a week, on average. [The child] remained in the home of [the father]'s parents, and [he] was welcome to visit as he chose. However, he continued to contact [the child] only during the minimum visitation hours. Further, [the father] chose not to use available technology to maintain contact when in-person visits were discouraged due to the COVID-19 public health situation. Citing long hours at work and a new job, [the father] chose to stay away rather than engage with [the child]. During his interaction with [the child], he generally participated in meal time, played with [the child], helped [R.S.] with toileting, and he was able to manage [the child's] behaviors during visits. However, those visits did not include bathing or bedtime routines, and the primary caregivers remained [the grandparents], not [the father]. In short, [the father] chose not to parent, and left that to his own parents. Visitation did not progress to semi-supervised or overnight visitation, and [the father] did not request more visitation/parenting time. He did ask for [the child] to be returned full-time to his care, but did not engage in the work required to show that [the child] would be safe and properly cared-for in that circumstance. The record reflects only a period of approximately ninety days during which [the father] provided care for [the child] during the past two years. After that period, [the father] chose not to do so for seventeen (17) months, insisting that [the child] simply be returned to his care without any transition. That period is roughly half of [the child]'s life.

The paternal grandparents have taken care of the child since December 2018 with little help from the father. While the father cares for the child and acted as a parent during his supervised visitation, it appears he made little effort to assume more responsibility or spend additional time with the child. The child is only three years old and strongly bonded to the grandparents, who provide for all

the child's needs. Under these circumstances, neither of the claimed exceptions under Iowa Code section 232.116(3) apply. Termination of the father's rights is in the child's best interests.

*4. Guardianship.* Lastly, the father claims the court should have placed the child in a guardianship with his parents rather than terminate his parental rights.

"[A] guardianship is not a legally preferable alternative to termination." *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017). A proposed guardianship must serve the child's best interests and needs. *Id.* at 34. Establishment of a guardianship requires a judicial determination that it is the best permanency plan for the child. *See id.* at 33–34.

The record does not show the father made an effort to work with the grandparents or take an active role with the child to transition into custody. Nor did the father present any testimony that the grandparents agreed to his proposed guardianship. Rather, the record shows the grandparents assumed the primary caretaking responsibilities for the child and the father failed to communicate with them or participate in all aspects of the child's life.

The case manager for the State recommended termination of the father's parental rights, as did the child's guardian ad litem. The child is too young to express a preference to continue the parental relationship and enter a guardianship. *Compare B.T.*, 894 N.W.2d at 34 (noting the ten-year-old child "wanted to maintain the relationship with his mother if she can remain sober, but if not, he wished to be placed with his Grandmother"), *with In re A.S.*, 906 N.W.2d 467, 478 (Iowa 2018) (noting "the child at age two is too young to express a preference"). The child has spent only four months in the father's custody and

then a year and a half in the grandparents' care.  A guardianship is not the best permanency option for this child, and we affirm the termination of the father's rights.

**AFFIRMED AND REMANDED.**